# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

GAYE C. HARRIS,
          Appellant,

      v.

OFFICE OF PERSONNEL
  MANAGEMENT,
          Agency.

DOCKET NUMBER
DA-0831-15-0515-I-1

DATE: September 12, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Edel P. Ruiseco</u>, Esquire, Corpus Christi, Texas, for the appellant.

<u>Sarah Murray</u>, Washington, D.C., for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the reconsideration decision of the Office of Personnel Management (OPM) denying her application for insurable interest survivor annuity benefits based on the service of her late fiancé.  Generally, we grant petitions such as this

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

¶2        The appellant's late fiancé, A.C., was employed by the Corpus Christi Army Depot under the Civil Service Retirement System.  Initial Appeal File (IAF), Tab 1 at 5, Tab 5 at 49.  In late June 2013, he sustained accidental injuries that rendered him quadriplegic.  IAF, Tab 5 at 10, Tab 8 at 4.  He and the appellant were to have been married on July 5, 2013.  IAF, Tab 5 at 10.  On July 18, 2013, A.C. designated his brother, G.C., as his power of attorney.  *Id.* at 73-107.  G.C. submitted an application for immediate retirement on his brother's behalf on September 9, 2013.  *Id.* at 48-50.  The application included electing a reduced annuity with a survivor annuity for the appellant, who was identified as A.C.'s domestic partner and as having an insurable interest.  *Id.* at 49.  Section F(4) of the application, where the applicant may select an insurable interest survivor annuity, states, with respect to such an annuity:  "You must be healthy and willing to provide medical evidence if you choose this type of annuity."  *Id.*  G.C. signed the application form, and the form indicates that A.C. was unavailable for signature.  *Id.* at 50, 52.

¶3      OPM received a medical report regarding A.C. from Dr. R. in December 2013, based on a consultation that took place on December 6, 2013. IAF, Tab 5 at 26-27, Tab 8 at 7. Dr. R. cataloged a lengthy list of physical conditions from which A.C. suffered, including recurrent pneumonia, respiratory failure, quadriplegia, bowel and bladder dysfunction, multiple decubitus wounds, hypertension, obstructive sleep apnea, post respiratory failure, and a nonhealing decubitus sacral ulcer, as well as a trachestomy. IAF, Tab 5 at 26-27. Although Dr. R. found that A.C. suffered from a mood disorder associated with his injuries, he determined that he was mentally competent to make decisions. *Id.*

¶4      On February 14, 2014, OPM sent A.C. an Annuity Election Confirmation form with information regarding the cost of providing an insurable interest annuity. *Id*. at 28-29. In that correspondence, OPM informed him that he "must also submit a medical report demonstrating that [he is] in good health" if he elected an insurable interest benefit for the appellant. *Id.* at 29. A.C. signed the Annuity Election Confirmation form on March 7, 2014, naming the appellant as the recipient of an insurable interest survivor annuity. *Id.* at 24. He signed the form in the presence of a witness by making a mark. *Id.* He also submitted a notarized statement attesting to his personal and financial relationship with the appellant. *Id.* at 23-24.

¶5      A.C., however, did not select any option on the form regarding submission of medical evidence demonstrating good health. *Id.* Although OPM's record includes only the statement prepared by Dr. R., the appellant asserted that she and G.C. submitted additional medical documentation to OPM. IAF, Tab 8 at 5. A medical report, dated April 17, 2014, and signed by Dr. K., states that A.C. was "competent to make decisions for himself, but . . . total[ly] dependent with all his activities of daily living due to a C-spine injury that left him paralyzed." IAF, Tab 13 at 4. On October 14, 2014, OPM informed A.C. that he was ineligible to elect an insurable interest for the appellant owing to his medical condition. IAF, Tab 5 at 25.

¶6    On December 31, 2014, A.C. died of "medical complications due to quadriplegia due to blunt force trauma." *Id.* at 22. The appellant filed an Application for Death Benefits as his domestic partner. *Id.* at 18-21. The agency denied her claim for a survivor annuity, explaining that she was ineligible to receive such an annuity because A.C. had not been in good health when he retired. *Id.* at 7. The appellant requested reconsideration of the agency's initial decision. *Id.* at 10. On June 23, 2015, the agency affirmed its initial decision, finding that she was ineligible to receive an insurable interest survivor annuity. *Id.* at 5-6.

¶7    The appellant timely appealed OPM's reconsideration decision. IAF, Tab 1. After a hearing, the administrative judge affirmed the reconsideration decision, finding that the appellant had not shown she was entitled to a survivor annuity based on A.C.'s electing an insurable interest because he had not been in good health when he retired in September 2013. IAF, Tab 28, Initial Decision (ID) at 7-9.

¶8    On review, the appellant argues that the administrative judge abused her discretion and made erroneous findings of material fact. Petition for Review (PFR) File, Tab 1. We disagree. The good health requirement for electing an insurable interest survivor annuity is a statutory one. The statute specifically states that an employee "who is found to be in good health" by OPM "[a]t the time of retiring . . . may elect a reduced annuity . . . and name in writing an individual having an insurable interest in the employee . . . to receive an annuity . . . after the death of the retired employee." 5 U.S.C. § 8339(k)(1). Detailed regulations governing the application for an insurable interest annuity, including those governing the proof of good health, are set forth at 5 C.F.R. § 831.613:

> To elect an insurable interest annuity, an employee . . . must indicate the intention to make the election on the application for retirement; submit evidence to demonstrate that he or she is in good health; and arrange and pay for the medical examination that shows that he or

> she is in good health. A report of the medical examination, signed and dated by a licensed physician, must be furnished to OPM on such forms and at such time and place as OPM may prescribe.

5 C.F.R. § 831.613(d). The retirement application also includes information about the requirement to supply medical documentation when electing such an annuity. IAF, Tab 5 at 39. Although the applicable statute and regulations do not define the term "good health," we may find interpretative guidance by consulting other retirement regulations that address health conditions. For example, the regulation governing the payment of lump-sum credits to retirees includes provisions for exempting such persons from partial deferment of the payments. *See* 5 C.F.R. § 831.2207.[2] There exists an exemption for retirees suffering from a "life-threatening affliction or other critical medical condition." 5 C.F.R. § 831.2207(c)(2). The regulation defines a "life-threatening affliction or other critical medical condition" as a "medical condition so severe as to reasonably limit an individual's probable life expectancy to less than two years." 5 C.F.R. § 831.2207(c)(3)(i). The regulation further states that "quadriplegia with life threatening complications" is a medical condition considered to be "prima facie evidence of a life-threatening affliction or other critical medical condition." 5 C.F.R. § 831.2207(c)(3)(ii)(U).

¶9    Even assuming that G.C. and the appellant supplied medical documentation other than Dr. R.'s report to OPM, A.C. clearly suffered from several serious medical conditions in September 2013 when he retired and initially elected an insurable interest survivor annuity for the appellant. His conditions included quadriplegia and related complications. IAF, Tab 5 at 26-27, Tab 13 at 4. It is undisputed that he was unable to complete his own retirement application and that

---

[2] The appellant argues on review that the administrative judge relied on an "inapplicable statute" by citing 5 C.F.R. § 831.2207. PFR File, Tab 1 at 7. Courts and administrative bodies, however, have long found interpretative guidance by consulting statutes and regulations similar or related to the statutes or regulations at issue in the cases they consider.

G.C. was acting as his power of attorney, owing to the seriousness of these conditions when he retired. IAF, Tab 5 at 50, 73-107. These conditions tragically caused his death 15 months after he retired. *Id.* at 22. OPM's conclusion that A.C. could not have been considered in good health within the meaning of the statute when he retired is reasonable and consistent with the plain language of the statute.

¶10 Further, OPM's interpretation of the term "good health" is entitled to deference. OPM is charged by Congress with interpreting civil service retirement law. *Hicks v. Office of Personnel Management*, 44 M.S.P.R. 340, 344 (1990). The construction given a statute by an agency charged with its interpretation is entitled to deference unless the interpretation is clearly erroneous, which the appellant did not show. *Id.* Moreover, the plain language of a statute controls absent clearly expressed legislative intent to the contrary. *Benedetto v. Office of Personnel Management*, 32 M.S.P.R. 530, 533 (1987), *aff'd, sub. nom. Horner v. Benedetto* 847 F.2d 814 (Fed. Cir. 1988).

¶11 The appellant argues on review that OPM changed A.C.'s election without the authority to do so and that the administrative judge misinterpreted the regulation, allowing that action to stand. PFR File, Tab 1 at 5-7. In reality, A.C.'s election was ineffective, despite submitting his Annuity Election Confirmation form and notarized statement, IAF, Tab 5 at 23-24, because he failed to provide documentation of his good health at the time of his retirement. The medical documentation he provided showed that he was not in good health and thus was ineligible to select an insurable interest annuity for the appellant. 5 U.S.C. § 8339(k)(1); 5 C.F.R. § 831.613(d); IAF, Tab 5 at 26-27, Tab 13 at 4.

¶12 The appellant argues that OPM was in possession of Dr. R.'s report when it issued the Annuity Election Confirmation form for A.C.'s election. Having tacitly approved the election, she argues, OPM cannot now reverse itself. PFR File, Tab 1 at 5. Although it is true that OPM's denial followed A.C.'s submitting the confirmation form, the delay in processing the appellant's election

does not negate the statutory requirements governing election of an insurable interest. The appellant's assertion that A.C. would have submitted additional medical documentation, had OPM timely informed him that his election was denied, is equally unavailing. *Id.* at 10-11. OPM notified A.C. more than 3 months before his death that he was ineligible to elect an insured interest survivor annuity. IAF, Tab 5 at 22, 25. Even if he or his representative had submitted medical documentation, OPM's conclusion regarding his health condition when he retired would not have changed.

¶13 The appellant on review also argues that the requirement for good health referred to A.C.'s mental competence. She explains that OPM requested information regarding his mental competence after receiving Dr. R.'s report, "confirm[ing] OPM staff's belief that [his] health did not refer to his physical condition." PFR File, Tab 1 at 7. She argues that she was informed by employees at the Corpus Christi Army Depot who assisted her and by OPM employees that mental competence was the key consideration for eligibility, and indeed OPM had raised questions about A.C.'s competence, which she and G.C. had answered. *Id.* at 8-9, 11-12; IAF, Tab 5 at 5, Tab 7 at 9-11, 14-15, Tab 13 at 4. She further notes that OPM requires annuitants to name representative payees when competence is at issue. PFR File, Tab 1 at 8. Here, it appears that the appellant is conflating OPM's questions about A.C.'s ability to handle his own affairs with the statutory requirement that an annuitant be in good health at the time of retirement to elect an insurable interest annuity.[3] *See* 5 U.S.C. § 8339(k)(1). Although A.C. appears to have been mentally competent until his death, IAF, Tab 13 at 5, he was nevertheless in poor physical condition when he retired, suffering from a disabling illness with several life-threatening complications, IAF, Tab 5 at 26-27.

---

[3] Because OPM also addressed A.C.'s failure to name a representative payee in the reconsideration decision, IAF, Tab 5 at 5, the appellant's misinterpretation is understandable.

¶14      The appellant argues that the administrative judge and OPM mischaracterized her relationship with A.C. as that of a domestic partner and did not acknowledge they were engaged to be married.  PFR File, Tab 1 at 7, 10-11. The administrative judge, however, specifically stated that the appellant and A.C. were engaged.  ID at 2.  A.C. characterized the appellant as a domestic partner on his election form, IAF, Tab 5 at 49, as did the appellant on her Application for Death Benefits, *id.* at 18.  In any event, OPM based its decision solely on the finding that A.C. was not in good health when he retired.  *Id.* at 6.

¶15      Finally, the appellant argues OPM should be equitably estopped from denying her an insurable interest annuity.  PFR File, Tab 1 at 11-12.  There is, however, no provision in law or equity that would allow the appellant to receive an insurable interest survivor annuity.  The Board lacks authority to grant retirement benefits contrary to the statutory and regulatory provisions even if an OPM employee has provided a claimant with erroneous advice in the matter. *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 416, 434 (1990).  The administrative judge's initial decision is thus correct, and we affirm it.[4]

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

---

[4] As the administrative judge correctly noted, OPM's final decision in this case was based solely on the insurable interest survivor annuity benefit.  ID at 8 n. 2.  Therefore, the appellant may apply for death benefits as A.C.'s common law spouse, and, if she is dissatisfied with OPM's final determination on her application, she can appeal that determination to the Board.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.